UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANGELIQUE JANEE SILVA,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>Defendant. | CASE NO. 2:15-CV-00344-RBL-DWC<br><br>REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT<br><br>Noting Date: September 18, 2015 |

The District Court has referred this action, filed pursuant to 42 U.S.C § 405(g), to United States Magistrate Judge David W. Christel. Plaintiff seeks judicial review of the denial of Plaintiff's application for Supplemental Security Income Benefits.

After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ") did not commit harmful error by including substance abuse disorder as one of Plaintiff's severe impairments at Step Two of the sequential evaluation. The ALJ also did not err by failing to call a medical expert witness or arrange for an additional consultative exam due to Plaintiff's diagnosis of schizophrenia. The ALJ provided specific and legitimate reasons for discrediting the

opinion of one of Plaintiff's examining psychiatrists. Finally, remand for the purpose of clarifying the ALJ's residual functional capacity finding is unnecessary. Therefore, the undersigned recommends the entry of an Order AFFIRMING the ALJ's decision pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL & FACTUAL HISTORY

On September 19, 2012, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), and on September 20, 2012, Plaintiff filed an application for Supplemental Security Income Benefits ("SSI"). *See* Dkt. 8, Administrative Record ("AR") 207-14. In her application, Plaintiff alleged she became disabled on February 2, 2009, due to numerous physical conditions, as well as anxiety attacks and dyslexia. *See* AR 241. Subsequent to her application, Plaintiff was also diagnosed with schizophrenia. AR 15, 456-58. Plaintiff's application was denied upon initial administrative review on December 19, 2012, and on reconsideration on March 15, 2013. *See* AR 143-58. A hearing was held before an ALJ on June 12, 2014, at which Plaintiff, represented by counsel, appeared and testified. *See* AR 34. During the hearing, Plaintiff, through her attorney, orally amended the alleged disability onset date to September 20, 2012 and withdrew her application for DIB. AR 13, 35-36. Therefore, this Court's review is limited to Plaintiff's application for SSI.

On August 7, 2014, the ALJ found Plaintiff was not disabled within the meaning of Sections 216(i) and 223(a) of the Social Security Act. AR 10, 26. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on January 5, 2015, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1, 20 C.F.R. § 404.981, § 416.1481. On March 6, 2015, Plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision.

1    Plaintiff argues the denial of benefits should be reversed and remanded for further
2  proceedings, because the ALJ erred by: (1) improperly finding Plaintiff had a substance abuse
3  disorder; (2) failing to call for additional medical expert testimony; (3) failing to give specific
4  and legitimate reasons for rejecting the opinion of an examining psychologist; and (4) failing to
5  clarify the ALJ's residual functional capacity finding Plaintiff was "able to concentrate for 2
6  hours at a time with occasional lapses". Dkt. 10, p. 1.

## STANDARD OF REVIEW

8    Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of
9  social security benefits only if the ALJ's findings are based on legal error or not supported by
10 substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th
11 Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is
12 more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable
13 mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747,
14 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). "If the
15 evidence admits of more than one rational interpretation," the Commissioner's decision must be
16 upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence
17 sufficient to support either outcome, we must affirm the decision actually made.") (quoting
18 *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

## DISCUSSION

20 **I.    Whether the ALJ Erred By Finding Plaintiff Had a Substance Abuse Disorder at Step Two of the Sequential Analysis.**

22   Plaintiff argues the ALJ erred by finding Plaintiff had the severe impairment of substance
   abuse disorder.

1    At Step Two of the sequential analysis, the ALJ is required to determine whether the
2    claimant has "a medically severe impairment or combination of impairments." *Smolen v. Chater*,
3    80 F.3d 1273, 1289-90 (9th Cir. 1996) (internal citation omitted); 20 C.F.R. §§
4    404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2015). Impairments must result "from anatomical,
5    physiological, or psychological abnormalities which can be shown by medically acceptable
6    clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908 (2010). Further, an
7    impairment "must be established by medical evidence consisting of signs, symptoms, and
8    laboratory findings, not only by [a claimant's] statement of symptoms." *Id.*
9    Specific rules govern the severe impairment of substance abuse disorder, which is
10   classified as a "Drug Addiction and Alcoholism" ("DAA") impairment under Social Security
11   Administration Rulings.  *See* Social Security Ruling ("SSR") 13-2p, 2013 WL 621536, *corrected*
12   *at* 2013 WL 1221979. The existence of a DAA impairment must be established through
13   objective medical evidence from an acceptable medical source. *Id.* "Clinical findings reported by
14   a psychiatrist, psychologist, or other appropriate acceptable medical source based on
15   examination of the claimant" are sufficient to establish a DAA impairment. *Id.* However,
16   evidence showing "only that the claimant uses drugs or alcohol does not in itself establish the
17   existence of a medically determinable Substance Use Disorder." *Id.* Evidence such as self-reports
18   of drug or alcohol use, arrests for driving under the influence, or third-party reports of drug or
19   alcohol use are not sufficient evidence to establish a DAA impairment. *Id.*
20   In this case, the ALJ found Plaintiff had the severe impairment of substance abuse
21   disorder, a DAA impairment, without any acceptable medical source clinical findings or opinions
22   reflecting such a diagnosis. Though the record contains several references to Plaintiff's drug and
23   alcohol use, none of the medical records contain a diagnosis of substance abuse disorder; in fact,
24

several records implicitly or explicitly reject a substance abuse diagnosis in spite of the documented evidence of drug use. *See* AR, 444, 447, 450, 465. These records and Plaintiff's self reports of drug use and her inconsistent reporting of drug use to medical providers are not sufficient to justify the ALJ's decision to find a severe impairment of "substance abuse disorder". SSR 13-2p, 2013 WL 621536.

Nonetheless, a DAA impairment such as "substance abuse disorder" can adversely impact a claimant's eligibility for benefits only if the impairment is "material" to the disability determination. *Id.* A DAA impairment, like any other severe impairment, has the potential to render an individual "unable to engage in any substantial gainful activity," thus meeting the threshold definition of disability under the Social Security Act. *See* 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A). However, if an individual only meets the definition of disability *because* of their DAA impairment (whether on its own or in combination with other impairments), the DAA impairment is "a contributing material factor" to the disability finding, and the Social Security Act requires that individual "not be considered to be disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). *See also* SSR 13-2p, 2013 WL 621536, *4 ("DAA is material to the determination of disability if the claimant would not meet [the] definition of disability if he or she were not using drugs or alcohol.").

For this rule to apply, there is one necessary predicate: an ALJ must first conclude a claimant is disabled under the five-step sequential evaluation before considering whether a severe impairment of DAA is material. SSR 13-2p, 2013 WL 621536, *4. *See also Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). If a claimant is able to engage in some substantial gainful activity despite their severe impairments, it does not matter whether one of those severe impairments is a DAA impairment

as they never met the threshold definition of disability in the first instance. SSR 13-2p, 2013 WL 621536, *5.

Here, the ALJ found Plaintiff had the severe impairments of schizophrenia, anxiety disorder, and substance abuse disorder. AR 15. The ALJ also found Plaintiff not disabled under the five-step sequential evaluation. AR 26. Critically, the ALJ did not base this non-disability determination on a finding that the substance abuse disorder impairment was "material." Instead, the ALJ concluded Plaintiff was not disabled because, despite all of her severe impairments, she could still perform jobs existing in substantial numbers in the national economy. AR 25. Plaintiff has not offered any argument for how this result would change had the ALJ not found Plaintiff had a substance abuse disorder.

The Court "will not reverse for errors that are inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012). The ALJ did not deny Plaintiff's claim on the basis of the materiality of the erroneous substance abuse disorder impairment. Therefore the ALJ error in including substance abuse disorder as a severe impairment at Step Two was harmless.

**II. Whether the ALJ Erred by Failing to Obtain an Additional Consultative Examination or Additional Medical Testimony Concerning Plaintiff's Diagnosis of Schizophrenia.**

The ALJ "has an independent duty to fully and fairly develop the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal citations and quotations omitted). This duty exists even when the claimant is represented by counsel. *Brown v. Heckler*, 713 F.2d 411, 443 (9th Cir. 1983) (per curiam). SSR 96-6p requires the ALJ to obtain updated medical expert opinion if, "in the opinion of the administrative law judge" additional medical evidence may change the state agency consultant's finding on equivalence. SSR 96-6p, 1996 WL 374180. "An

1    ALJ's duty to develop the record further is [also] triggered . . . when there is ambiguous

2    evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*

3    *v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). But, the decision to seek additional medical

4    expert testimony is left to the discretion of the ALJ. *See* 20 C.F.R. §§ 404.1527(e)(2)(iii),

5    416.927(e)(2)(iii).

6          Plaintiff claims the ALJ's duty to develop the record was triggered because Plaintiff was

7    first diagnosed with schizophrenia after the State agency medical consultants had completed their

8    review. AR 458. Plaintiff argues her schizophrenia diagnosis provides an alternative explanation

9    to several issues highlighted by the ALJ. Specifically, Plaintiff claims her schizophrenia could

10   explain: (1) physical symptoms, such as fatigue, which the ALJ discredited; (2) symptoms which

11   the ALJ may have improperly attributed to drug and alcohol use; and (3) inconsistencies in her

12   testimony which the ALJ attributed to dishonesty. As a result, Plaintiff contends the ALJ is

13   required to reopen the record for additional medical testimony or a new consultative

14   examination.

15         A.  *Whether SSR 96-6p Required Additional Medical Testimony*

16         First, Plaintiff argues the ALJ was required to obtain additional medical testimony

17   because Plaintiff's diagnosis of schizophrenia "may change the State agency medical or

18   psychological consultant's finding that the impairment(s) is not equivalent in severity to any

19   impairment in the Listing of Impairments." SSR 96-6p, 1996 WL 374180. In this case, the ALJ

20   thoroughly reviewed the evidence of schizophrenia in the record, including the opinion of the

21   diagnosing psychiatrist, Mel Chandler, M.D., and did not find any credible limitations or

22   restrictions arising from the schizophrenia diagnosis not otherwise accounted for in the residual

23   functional capacity. AR 18-19, 24-25, 456-58, 460. Plaintiff, further, has not offered any

24

plausible theory which would show how her impairments met or equaled a listing, and a review of the record does not reveal evidence Plaintiff had any episodes of decompensation or marked limitations arising out of her schizophrenia. *See Burch v. Barnhart,* 400 F.3d 676, 683 (9th Cir. 2005) ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalency.") (citing *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001); *Marcia v. Sullivan*, 900 F.2d 172 (9th Cir. 1990). *See also Durbin v. Astrue*, 2011 WL 5877462, *11-*12 (W.D. Wa. 2011). As Plaintiff failed to demonstrate how her most recent diagnosis of schizophrenia could meet or equal a listing, the ALJ was not required to obtain additional medical testimony under SSR 96-6p.

> B.   *Whether Additional Medical Testimony was Required Because the Evidence Was Ambiguous or the Record Was Incomplete*

Plaintiff also argues the ALJ should have called for additional medical expert testimony or an additional consultative evaluation, as the evidence of Plaintiff's impairments is ambiguous and the record is inadequate to allow for a proper evaluation of the evidence. *See Mayes*, 276 F.3d at 459-60.Plaintiff contends many of her discredited physical symptoms—as well as numerous inconsistencies in her testimony and prior reports to physicians—could be otherwise explained by her diagnosis of schizophrenia, creating an ambiguity which requires additional medical testimony. However, Plaintiff does not actually identify any ambiguity in the evidence or inadequacy in the record which required additional consultative examination or medical testimony to resolve. Contrary to Plaintiff's argument, an ALJ is not required to seek additional medical testimony to resolve every ambiguity or inconsistency in the medical evidence. *See* 20 C.F.R. §§ 404.1520b, 416.920b. If the ALJ finds the evidence is sufficient and can come to a

1 | conclusion about whether a claimant is disabled, additional medical testimony is not necessary.
2 | *Id.*
3 |       The case of *Tonapetyan v. Halter* is instructive on this point. In *Tonapetyan*, the ALJ
4 | relied upon the testimony of a non-examining medical witness to establish the claimant had
5 | dysthymia. *Tonapetyan*, 242 F.3d at 1150. Significantly, however, the witness was equivocal in
6 | his diagnosis, as the medical records were incomplete and ambiguous. *Id.* Even when pressed to
7 | resolve the ambiguities and conflicts between two physician's opinions in the record, the medical
8 | witness was adamant there was no way for him to do so without additional medical evidence
9 | elaborating on, and clarifying, the original opinions. *Id.* The Ninth Circuit found the ALJ
10 | committed harmful error by relying on the dysthymia diagnosis, as "the ALJ was not free to
11 | ignore [the witness'] equivocations and his concern over the lack of a complete record upon
12 | which to assess Tonapetyan's mental impairment. Moreover, he was not free to ignore [the
13 | witness'] specific recommendation that a more detailed report from [the treating physician] be
14 | obtained."*Id.* at 1151.
15 |       Unlike the situation presented in *Tonapetyan*, the record in this case is not sufficiently
16 | ambiguous or incomplete to the point where the ALJ "lacked sufficient evidence to render a
17 | decision." *Id.* at 1150. The medical evidence of schizophrenia was before the ALJ, and the ALJ
18 | was entitled to determine credibility and resolve ambiguities and conflicts in the medical
19 | evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ thoroughly considered
20 | Dr. Chandler's opinion concerning Plaintiff's schizophrenia, but gave it little weight as Dr.
21 | Chandler did not have an opportunity to review the full record of Plaintiff's drug and alcohol
22 | use, and also relied upon inaccurate information from Plaintiff. AR 21, 24, 456-58, 460. Further,
23 | there is no indication from the record that exploring the motivation behind Plaintiff's
24 |

inconsistent statements would change the ALJ's credibility analysis. The fact a claimant is not motivated by dishonesty does not necessarily mean the ALJ is required to believe the claimant's testimony. *See Green v. Heckler*, 803 F.2d 528, 531-32 (9th Cir. 1986) (observing a claimant may sincerely believe certain symptoms which are nonetheless not credible in light of the whole record). The ALJ also pointed to numerous inconsistencies in Plaintiff's reports to physicians which predate her schizophrenia diagnosis by several years. *See, e.g.*, AR 20, 21, 349, 384, 437. *See also* Section III, *infra*. The ALJ properly exercised discretion in choosing not to call a medical expert or seek an additional consultative evaluation, and this Court finds no error.

### III. Whether the ALJ Provided Specific and Legitimate Reasons for Rejecting the Opinion of Examining Psychiatrist Anselm Parlatore, M.D.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick*, 157 F.3d at 722. Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of the Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). But when a treating or examining physician's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v.*

*Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (citing *Magallanes,* 881 F.2d at 751).

Plaintiff's examining psychiatrist, Anselm Parlatore, M.D., conducted a mental status exam on November 27, 2012. AR 383. Dr. Parlatore diagnosed Plaintiff with panic disorder and post-traumatic stress disorder, and opined these disorders "markedly impaired" her memory, concentration, pace and persistence. AR 386. Dr. Parlatore also opined Plaintiff would be unable to perform activities within a schedule, maintain regular attendance, or be punctual. *Id.* The ALJ gave little weight to Dr. Parlatore's opinion for three reasons. First, the ALJ found Dr. Parlatore's opinion was based, in part, on incorrect information provided by Plaintiff. AR 23. Second, the ALJ found Dr. Parlatore's observations at Plaintiff's examination were inconsistent with the remainder of the record. *Id.* Finally, the ALJ found Dr. Parlatore based some of his opinions concerning Plaintiff's mental impairments on her self-reports of physical problems. *Id.*

Plaintiff argues none of these reasons are specific and legitimate reasons for rejecting Dr. Parlatore's opinion. However, the Court disagrees.

### A.   *Dr. Parlatore's Opinion Was Premised on Incorrect Information*

Throughout his written opinion, Dr. Parlatore relied upon information which was materially inconsistent with statements and testimony elsewhere in the record. For example, during Dr. Parlatore's examination, Plaintiff "completely denied a history of drug use and alcohol." AR 23, 384. However, approximately two weeks after Dr. Parlatore's examination,

laboratory screenings revealed the presence of amphetamines and barbiturates in her system.[1] AR 391. In addition, the record reflects Plaintiff used methamphetamines on other occasions, admitted to cocaine use on at least one occasion, and also admitted to alcohol use in the months prior to Dr. Parlatore's evaluation. AR 23, 52-55, 349, 437, 440, 456.

Dr. Parlatore's opinion also reflects several other inconsistencies with the record; for example, Plaintiff represented she had a higher level of education, a longer work history, and greater impairments in her activities of daily living than are reflected elsewhere in the record. AR 45-47, 222-24, 262, 272, 384-85. Contrary to Plaintiff's argument, these inaccuracies all bore directly on Dr. Parlatore's opinions concerning Plaintiff's functional limitations. The fact Dr. Parlatore's opinion relies on incorrect information is a specific and legitimate reason for discounting his opinion, and the ALJ acted reasonably in doing so. *See Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

### B.  Dr. Parlatore's Observations were Inconsistent With the Record

During Plaintiff's examination, Dr. Parlatore also made observations which the ALJ found to be inconsistent with the record as a whole. For example, Plaintiff exhibited visible anxiety during Dr. Parlatore's examination, but did not exhibit those same outward signs of anxiety in a contemporaneous office visit with her primary care physician, Shannon A. Boustead,

---

[1] Plaintiff argues the December 2012 amphetamines screen was a false positive due to medications she was taking at the time. *See* Dkt. 10, p. 4, n. 4, (citing Fenderson, Joshua L., *Amphetamine Positive Urine Toxicology Screen Secondary to Atomoxetine*, 2013 Case Rep. Psychiatry, Article ID 381261, January 30, 2013 (*available at* http://www.ncbi.nlm.nih.gov/pmc/articles. However, the Commissioner correctly observes the amphetamines screen was confirmed using gas chromatography/mass spectrometry testing, which, according to Plaintiff's own source, was not susceptible to false positives arising out of Plaintiff's medications. AR 391.

M.D.. AR 23, 365, 385. At that same visit, Plaintiff demonstrated normal thought processes and cognitive function, contradicting Dr. Parlatore's reports of deficiencies in Plaintiff's memory and concentration. AR 23, 365, 385. The ALJ also cited to several other office and emergency room visits which were largely consistent with Dr. Boustead's observations yet inconsistent with Dr. Parlatore's observations. *See* AR 369, 424. The consistency of a medical opinion with the whole record is an important factor in weighing a medical opinion's credibility, and the ALJ reasonably did so here. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Plaintiff argues the ALJ should have interpreted those treatment notes in a manner consistent with Dr. Parlatore's evaluation; however, to the extent the treatment records admit of more than one interpretation, the ALJ's interpretation of those records was rational and reasonable, and should not be disturbed by this Court. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

    C. *Dr. Parlatore Based Part of His Opinion Concerning Plaintiff's Mental Impairments on her Physical Problems*

Finally, while Dr. Parlatore opined the claimant would have marked impairments in attendance and her ability to complete a workday or workweek, he specifically attributes Plaintiff's absenteeism to physical, rather than mental symptoms. AR 386. The ALJ cites this reliance on physical symptoms as a basis for discrediting Dr. Parlatore's opinion "that the claimant had marked impairment with concentration, pace, persistence, attendance, and work week/day completion." AR 23. To the extent this reasoning was flawed, however, any such error was harmless as the ALJ had other specific and legitimate reasons to discount Dr. Parlatore's opinion. *See* Section III(A) and (B), *supra*. *See also Molina*, 674 F.3d at 1115.

1     **IV.**     **Whether the ALJ Erred by Failing to Clarify the Meaning of the Phrase "Able to Concentrate for 2 hours at a Time with Occasional Lapses in Concentration" in Plaintiff's Residual Functional Capacity.**

If the ALJ cannot determine whether or not a claimant is disabled based on a claimant's current work activity or on medical factors alone and a claimant has a severe impairment, the ALJ reviews the claimant's residual functional capacity ("RFC"). *See* SSR 96-8p, 1996 WL 374184 at *1. "Social Security Regulations define residual functional capacity as the 'maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." *Reddick*, 157 F.3d at 724 (quoting 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c)) (emphasis added by Ninth Circuit). *See also* SSR 96-8p, 1996 WL 374184 at *2. Residual functional capacity is the most a claimant can do despite existing limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). *See also* 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c). The regulations further specify: "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b). *See also* 20 C.F.R. § 404.1545(c) (discussing assessment of mental abilities).

As part of the ALJ's residual functional capacity finding, the ALJ found Plaintiff "is able to concentrate for 2 hours at a time with *occasional* lapses." AR 19 (emphasis added). Plaintiff argues the ALJ's use of "occasional" means Plaintiff could have lapses in concentration up to thirty-three percent of a workday. *See* SSR 83-10, 1983 WL 31251, at *5 (defining "occasional," in the context of exertional impairments, to mean "very little up to one-third of the time."). Plaintiff contends this is materially inconsistent with the testimony of the Vocational Expert, who indicated Plaintiff could be distracted for no more than fifteen to twenty percent of the day

and still maintain employment. AR 65. Plaintiff requests a remand for further clarification of the meaning of "occasional lapses."

The ALJ, however, adequately clarified this time limitation in the written decision. The ALJ obtained the limitation from State agency medical consultants Matthew Comrie, Psy.D. and David Scott, Ph.D., who found Plaintiff had "the ability to concentrate for up to 2 hrs w/occ lapses." AR 87, 103. The ALJ found:

> [This] wording was not a model of clarity, [however] the regulations and SSRs are unequivocal in stating that a person must be able to work regularly and continuously (i.e. 8 hours per day for 5 days per week). If she were only able to concentrate for just 2 hours in a workday, it would necessarily preclude her from all full-time work and result in a finding of "disabled." The fact that they determined she was "not disabled" meant that she was able to concentrate throughout a workday. The 2-hour restriction reasonably meant that she could concentrate in periods of 2 hours after which she would have usual and customary breaks (e.g. breaks, lunch, etc.).

AR 22. This reading is reasonable. By the same logic, the ALJ could not have concluded, in light of the Vocational Expert's testimony, that Plaintiff was unable to concentrate for up to thirty-three percent of the workday while still finding Plaintiff to be not disabled. Instead, the only logical reading of the ALJ's residual functional capacity determination is that Plaintiff is capable of concentrating up to two hours at a time, and the "occasional" lapses described by the ALJ would consist of usual and customary breaks. AR 22. *See also Magallanes*, 881 F.2d 747, 755 (a reviewing Court is allowed to draw "specific and legitimate inferences from the ALJ's opinion"). Thus, a remand for additional fact-finding is not necessary.

## **CONCLUSION**

Based on the above stated reasons and the relevant record, the undersigned finds the ALJ properly concluded Plaintiff was not disabled and recommends this matter be AFFIRMED

1  pursuant to sentence four of 42 U.S.C. § 405(g). The undersigned recommends JUDGMENT be

2  entered for DEFENDANT and the case closed.

3        Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

4  fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

5  6. Failure to file objections will result in a waiver of those objections for purposes of de novo

6  review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

7  imposed by Rule 72(b), the clerk is directed to set the matter for consideration on September 18,

8  2015, as noted in the caption.

9        Dated this 31st day of August, 2015.

10

11                                             David W. Christel

12                                             United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24